UNITED STATES DISTRICT COURT
for the
Eastern District of New York

----------------------------------------------------------------

ALBERT E. PERCY as Class Representative and Percy
Jobs and Careers Corporation an IRC 501(c)(3) non-profit,

        *Plaintiff,*

    v.

ORISKA CORP. GENERAL CONTRACTING,

        *Defendant, Third-Party Plaintiff,*

    v.

MERKOURIOS ANGELIADES IRREVOCABLE
TRUST, LIBERTY MERKOURIOS as Trustee of the
MERKOURIOS ANGELIADES IRREVOCABLE
TRUST, M.A. ANGELIADES, INC., LIBERTY
MERKOURIOUS, as Chief Executive Officer of
M.A. Angeliades, Inc and MERKOURIOS
ANGELIADES, Individually, Nicholas Kordas
individually and on behalf of Kordas &
Marinis, LLP,

        *Third-party defendant(s)*

Case No. 1:20-cv-06131-NGG-CLP

**ANSWER AND THIRD PARTY COMPLAINT**

----------------------------------------------------------------

Defendant, Oriska Corp. General Contracting ("Oriska Corp. GC") as and for its answer to the Complaint in this action states as follows:

    1.   Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 1 of the Complaint.

    2.   Deny knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 2 of the Complaint.

3.   Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 3 of the Complaint.

4.   Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 4 of the Complaint.

5.   Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 5 of the Complaint.

6.   Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 6 of the Complaint.

7.   Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 7 of the Complaint.

8.   Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 8 of the Complaint.

9.   Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 9 of the Complaint.

10.  Deny knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 10 of the Complaint.

11.   Admits paragraph 11.

12.   Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 12 of the Complaint.

13.   Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 13 of the Complaint.

14.   Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 14 of the Complaint.

15.   Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 15 of the Complaint.

16.   Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 16 of the Complaint.

17.   Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 17 of the Complaint.

18.   Admits paragraph 18.

19.   Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 19 of the

Complaint.

20.  Admits paragraph 20.

21.  Admits paragraph 21.

22.  Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 22 of the Complaint.

23.  Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 23 of the Complaint.

24.  Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 24 of the Complaint.

25.  Admits paragraph 25.

26.  Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 26 of the Complaint.

27.  Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 27 of the Complaint.

28.  Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 28 of the Complaint.

29.  Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 29 of the

Complaint.

30.  Deny  knowledge  or  information  sufficient  to  form  a belief as to the truth of  the allegations in paragraph 30 of the Complaint.

31.  Deny  knowledge  or  information  sufficient  to  form  a belief as to the truth of  the allegations in paragraph 31 of the Complaint.

**THIRD – PARTY COMPLAINT**

**I. The Primary Action Plaintiffs**

32.  The  Primary  Action  Plaintiffs  are  Albert  E.  Percy  as Class Representative for the Class and Percy and Jobs and Careers Corporation an IRC 501(c)(3) non-profit.

**II.    The Primary Action Defendant(s)/Third-Party Plaintiff**

33.  Defendant/Third-Party  Plaintiff  ORISKA  CORP.  GENERAL CONTRACTING  ("Oriska  Corp.  GC")  is  a  Florida  corporation  doing business  in  New  York  with  a  registered  address  for  service  of process at 1310 Utica Street, Oriskany, New York, 13424

**III.   The Third Party Defendants**

34.  Merkourious  Angeliades  Irrevocable  Trust  ("Defendant Seller)  M.A.  Angeliades,  Inc.  ("Third-Party  Defendant  Company MAA"),  Merkourious  Angeliades  ("Third-Party  Defendant  MA"),  and these third-party defendants also collectively set forth herein as the Third-Party Defendants, all doing business in New York at 5-

44 47th Avenue Long Island City, New York 11101.

*35.* Nicholas Kordas individually and on behalf of Kordas & Marinis, LLP, doing business at 5-44 47th Avenue, Long Island City, New York, 11101.

### IV.   Underlying Primary Complaint

36. The underlying Complaint against Oriska Corp. GC, the Defendant and Third-party Plaintiff, involves liability for unlawful employment practices of discrimination based on Plaintiffs' ability to meet their burden of production and persuasion proving that Plaintiffs demonstrated that there was a less discriminatory alternative method of employment practice ("Alternative Employment Practice"). Plaintiffs make the demonstration in accordance with the law as it existed on June 4, 1989 with respect to an Alternative Employment Practice, described in subparagraph (C) referred to by subparagraph (A)(ii) of 42 U.S.C. § 2000e-2(k)(1). The Defendant respondent has refused to adopt such Alternative Employment Practice without valid justification, violating 42 U.S.C. § 2000e-2 of the Civil Rights Act of 1964 as amended in 1991.

37. In addition, this action is for breach of contract brought by the Percy Class as third-party beneficiaries for violating conditions of contracts, including but not limited to Executive Order 11246 ("EO 11246").

## V. Third-Party Complaint

38.   Oriska Corp. GC took on the task of providing paid-the-job apprentice training upon moving from Florida to New York City to enter the construction market. Oriska Corp. GC lacked experience and credentials to be a qualified bidder and contractor did the New York City market, so Oriska Corp. GC bought the controlling shares of MAA.

39.   ORISKA CORP. GC entered into an agreement (the "Contract", Exhibit "A") with the Third-Party Defendants to acquire all of the authorized and outstanding shares of MAA to take over control of MAA, allowing new management to adopt the Alternative Employment Practice alleged in the Complaint in this matter. ORISKA CORP. GC arranged with Oriska Insurance Company for MAA to be covered for Workers' Compensation Insurance with safety and loss control management, which included on-the-job apprentice training with related classroom instruction, accomplishing a private solution to the failed settlement in Percy v. Brennan.

40.   ORISKA CORP. GC entered into the Contract and paid consideration required by the Contract of $150,000 on November 16, 2012 by wire paid to the order of Nicholas Kordas of Kordas & Marinis, LLP IOLA account.

41.   MAA was one of the 400 largest contractors on the list of Engineering News Record's List of the Top 400 Contractors in the US ranked 308th by construction revenue, and on the Crain's

list of New York area largest construction companies ranked 12th by revenue. OCGC acquired MAA, one of the top 400 contractors in the country when ORISKA CORP. GC acquired MAA.

42.   The Contract was intended to enable the demonstration of the Percy Alternative Employment Practice, in order to replead Case Evans v. The Port Authority of New York & New Jersey 15-CV-3942 (MKB), replied as an Alternative Employment Practice case under 42 U.S.C. 2000 e-2, using the demonstrated Alternative Employment Practice to be adopted by MAA to persuade other employers to adopt similar alternative employment practices of paid on-the-job apprentice training with related classroom instruction, delivering the relief so long ago awarded to the Percy Class, now the subject of enforcement of the settlement in Percy v. Brennan.

43.   MAA was to demonstrate and advocate the Percy Program as an alternative employment practice, however, ORISKA CORP. GC encountered that the principal owner and operator of MAA was barred.

44.   ORISKA CORP. GC paid $150,000 consideration and has complied with all the terms of the Contract and performed all of ORISKA CORP. GC's obligations under the Contract. MAA was an ideal candidate for the Percy Alternative Employment Practice. MAA was intended as the demonstration vehicle, to demonstrate an alternative employment practice under 42 U.S.C. 2000 e--2 of the

Civil Rights Act, MAA to demonstrate and persuade by example, demonstrating the relief awarded to the Percy Class, a class of black or Spanish-surnamed persons who are capable of performing, or capable of learning to perform" in skilled occupations (herein the "Percy Class") the class adjudged entitled to relief, the Class certified in Percy v. Brennan, Federal District Court SDNY Case 73-cv-04279, reported at 384 F. Supp 800, at Page 808, docketed in US 2nd Circuit Court of Appeals appeal No. 17-2274 Docket #97 page 0003 and Docket #99 page 640.

45.  ORISKA CORP. GC arranged for Workers' Compensation insurance coverage through Oriska Insurance Company, which included safety and loss management, incorporating paid on-the-job apprentice training, with related classroom instruction provided by Plaintiff Percy Jobs and Careers Corporation, referred to here as the Percy Program.

46.  Third-Party Plaintiff arranged for Workers' Compensation coverage for MAA commencing on January 31, 2014, coverage that remains in force to date scheduled to expire April 1, 2021. MAA accepted and relied on the coverage provided by Oriska Insurance Company at the special instance and request of the Third-Party Plaintiff Oriska Corp. GC to satisfy MAA's requirements under Workers' Compensation Law 50.

47.  The Third-Party Defendant MAA paid minimal premium for the Workers' Compensation Insurance of:

```
9/17/2014 17,736.44
1/21/2016 5,839.99
1/25/2016 34,231.56
2/3/2016  2,189.96
3/3/2016  2,189.96
4/6/2016  2,189.96
5/4/2016  2,189.96
7/13/2016 4,379.92
8/4/2016  2,189.96
9/8/2016  2,189.96
10/3/2016 2,189.96
11/7/2016 2,192.37
4/3/2017  5,813.50
```

And nothing has been paid toward the workers' Compensation coverage since April 3, 2017, although MAA has continued to be covered from from April 3, 2017 to the present. MAA has not obtained and has not provided proof of replacement coverage for Workers' Compensation Insurance. Proofs of Coverage have been filed with the New York State Workers' Compensation Board for January 31, 2014 through April 1, 2021 by Oriska Insurance Company. MAA has not permitted an audit of its operations to determine final premium for Workers' Compensation coverage. By desk audit there is premium due of $204,000.

48. The Workers' Compensation Coverage was part of the consideration for the rehabilitation of MAA to be a qualified contractor to support the adoption of the Percy Program by MAA to demonstrate the Percy Alternative Employment Practice of paid on-the-job apprentice training with related classroom instruction incorporated into safety and loss management within Workers' Compensation coverage provided to MAA.

49.  Plaintiff Percy Jobs and Careers Corporation is a 501(c)(3) non-profit. This non-profit 501(c)(3) Corporation was established to sponsor benefits under a plan ("Plan") under a program (the "Program") of 24 hour protection for the employee Class Plaintiff, established under 29 U.S.C. §1003 of the Employment Retirement Income Security Act ("ERISA") as an "employee benefit plan", a plan selected from health, disability, training, apprenticeship, continuing education, safety, loss control, risk-management and workers' compensation benefit parts of the Program to fund benefits for  disadvantaged persons. The Plan relies upon MAA to be a performing contractor hiring the skilled journey persons to mentor apprentices. All of the parts of the Plan were accomplished, except acquisition of MAA, an acquisition that was thwarted by MA, removing MAA as the performing contractor employing skilled craftsman to work alongside apprentices to learn skilled trades, apprentices gaining skills to compete for jobs and careers based on skills rather than skin color or ethnicity.

50.  In the progress of the Contract, it was discovered that MAA was subject to an Independent Private Sector Inspector General (hereinafter "IPSIG") for MAA due to issues that bear on the MAA's honesty, fair dealings, and integrity, and MAA was barred from public work construction due to a conviction of MA. There were estimated unpaid employee claims to amount to approximately

$955,000 and $982,000 which was included in accounts payable and in accrued expenses as of June 30, 2011 and December 31,2010, respectively. MAA was disqualified from working on projects for the School Construction Authority and the New York City Transit Authority and became ineligible to reapply for prequalification responsible bidder status until MA was removed from the corporate structure. Thatcher & Assoc. was appointed as an integrity monitor as the IPSIG to oversee the completion of outstanding contracts of MAA with the New York City Transit Authority and the School Construction Authority and was barred from award of any new work from public and government agencies and authorities until there was a change of control of MAA, as a condition of contract award. The IPSIG was to continue its oversight of the existing construction contracts until fully completed, and that the scope of the IPSIG be expanded to include ORISKA CORP. GC MA was required to resign of all positions of employment with MAA, except with the consent of the government agencies involved.

51.   When ORISKA CORP. GC became aware of the IPSIG during the performance of the Contract, ORISKA CORP. GC worked with Thatcher IPSIG to lift restrictions by public authorities to obtain approval for the change of control, a return of MA and resume MAA as a qualified contractor capable of being awarded public work projects. Plaintiff paid Thatcher IPSIG $30,816.97 to and on behalf of MAA to pay for the fees billed by the IPSIG which were

obligations of MAA.

52.   The Plan required that MAA have a reputation for honesty, fair dealings, and integrity for MAA to be qualified to bid and contract for government, as was contemplated and disclosed to MA.

53.   The Plan that was demonstrated to the Seller contemplated MAA being qualified as a responsible bidder to competitively bid on contract with government and other public agencies and authorities.

54.   The Plan demonstrated to MA that MAA would become a sponsor of redeeming social programs for minority and disadvantaged persons.

55.   The Third-Party Plaintiff purchased plans and specifications on behalf of MAA to determine the viability of MAA as a plan holder. A plan holder is permitted to attend pre-bid meetings and communicate with owners as an entity vetted for integrity to be a viable responsible bidder.

56.   MAA was planned to be the vessel for minority owned subcontractors to subcontract, MAA as well was to sponsor apprentice training where appropriate for minority and disadvantaged persons. The object was to bring minorities into the skilled trades and incubate minority businesses to be sponsoring employers are the Alternative Employment Practice registered with the New York State Department of Labor and New York State Department of Education, provided through the facilities at SUNY

Maritime.

57.   In accordance with the Plan, Plaintiffs demonstrated to Oriska Corp. GC and MA that Plaintiffs established a non-profit 501(c)(3) Corporation to work with sponsors of apprenticeship for members of the Percy Class.

58.   The Plan relies upon MAA to be a performing contractor hiring skilled journeypersons to mentor apprentices. All of the parts of the Plan were accomplished, except taking control of MAA, an acquisition that was thwarted by the Third-Party Defendants breaching the Contract, removing MAA as the necessary element of the Plan. MAA failed to qualify as a performing contractor to be able to employ skilled journey craft persons to work alongside apprentices, apprentices thereby gaining skills to compete for jobs and careers based on skills rather than skin color or ethnicity.

59.   Third-Party Defendants have failed to perform the terms of the Contract by their actions breaching the Contract, damaging the Third-Party Plaintiff Oriska Corp. GC, and in turn the Percy Class as third-party beneficiaries of the Contract. The Third-Party Plaintiff ORISKA CORP. GC brings this action for breach of Contract, the Contract intended to enable the demonstration of the Percy Alternative Employment Practice under 42 U.S.C. 2000 e- 2, using the demonstrated Alternative Employment Practice to be adopted by MAA to persuade all manner of employers to adopt similar

alternative employment practices of paid on-the-job apprentice training with related classroom instruction, delivering the relief so long ago awarded to the Percy Class.

60. At the time of Contract, MAA was one of the top contractors on the list of Engineering News Record's List of the Top 400 Contractors in the US ranked 308th by construction revenue, and on the Crain's list of New York area largest construction companies ranked 12th by revenue. OCGC acquired MAA, one of the top 400 contractors in the country, doing business in Queens, New York, to gain access to its qualifications in the New York City market. MAA was an ideal candidate to demonstrate the Percy alternative employment practice. The problem is that MAA had committed employment violations requiring MAA to be restructured to eliminate MA as a controlling person of MAA.

61. The representations by the Seller Third-Party Defendants that MAA possesses integrity and credentials to be a responsible qualified bidder on public works projects, were false. It was discovered that MAA had failed to rectify its bar resulting in the appointment of the IPSIG.

62. Then, while Oriska Corp. GC was seeking by due diligence to clear the clouds of MAA's integrity status to resume as a responsible bidder, and in violation of the Contract, MA asserted through his attorney, that he was trying to sell MAA to another party, by letter from his attorney Nicholas Kordas of Kordas &

Marinis, LLP of July 10, 2019, a clear violation of the Contract, disregarding all of the due diligence and effort by ORISKA CORP. GC.

63. Third-Party Defendants have never produced account records of the Dedicated Account for receivables of MAA to clear the clouds on MAA, required by the Contract and to be used exclusively for executing the terms of the Contract, Exhibit A Article III 2.4(c), a Dedicated Account required to be maintained by the MAA in escrow by the attorney for Seller Nicholas Kordas of Kordas & Marinis, LLP. The Seller breached the Contract, failing to produce account records of the Retained Amounts, Retain Amounts which were not to be reduced unless Obligations and Liabilities were settled, satisfied or otherwise disposed. There was no reconciliation to verify that funds released to MAA, MA or others as paid to the Seller retaining sufficient assets to secure the Obligations and Liabilities of MAA. The Retained receivables should have gone through the Dedicated Account, no records ever been produced regarding the Dedicated Account.

64. Seller represented that the disclosed wage violation was not an issue, when in fact the IPSIG affected MAA as a going enterprise, in breach of the Seller warranties, as there were no exceptions in a disclosure schedule as called for under Article III 3.3 (b) of the Contract. These Material Adverse Effects of the IPSIG for MAA impaired the integrity and ability of MAA to

be a responsible bidder, materially affecting the sale undertaken in disregard to and in breach of the Contract, and in particular Article III and Article IV of Exhibit "A".

65.   The Third-Party Defendants did not provide a Disclosure Schedule which qualified the representations and warranties contained in Articles III and IV of Exhibit "A". Defendants failed to provide a Disclosure Schedule of actions, suits, claims, proceedings, arbitration, or investigations as called for at paragraph 3.6 of the Agreement.

66.   Oriska Corp. GC has been damaged by MA failing to correct and rehabilitate MAA so as that MAA possessed the integrity necessary to be a responsible bidder, interfering with the affirmative action for equal employment opportunity demonstrated to MA as the reason and the need for MAA to resume as a going enterprise.

67.   All of the obligations of the Third-Party Plaintiff under the Contract have been performed.

68.   The Plan has been thwarted by MA failing to return MAA as a going enterprise, instead MA has stolen the MAA corporate shell that was sold by the Contract in order to sell it to another party while converting the $180,000 consideration paid by the Third-Party Plaintiff on the Contract, including but not limited the amount paid to the IPSIG of $30,816.97 for fees for IPSIG's part in accomplishing resumption of status of MAA as a qualified

bidder.

69.   Oriska Corp. GC has been thwarted by MA failing to return MAA as a going enterprise, instead Ma converted the corporate shell that was under the Contract, to sell MAA to another party, and converting the $150,000 deposit, and ORISKA CORP. GC's payments to the IPSIG.

70.   Upon information and belief, the escrow agent, Nicholas Kordas of Kordas & Marinis, LLP, paid the escrowed funds to the Seller before the Seller had earned the consideration by performing the terms of the Contract. The Third-Party Plaintiff has reason to believe that the Escrow Agent released the $150,000 being held in trust in its IOLA account to the Third-Party Defendants without authority and in violation of Judiciary Law § 497 and 22 N.Y.C.R.R. § 1200.46 NY Rule 1.15 (formerly DR 9-102) and rules for acting in a fiduciary capacity as escrow agents when holding the funds of clients and/or third parties.

## VI.   AS AND FOR A FIRST CAUSE OF ACTION FOR ILLEGAL EMPLOYMENT PRACTICES

71.   All the allegations previously stated are re-alleged and incorporated herein.

72.   MAA was intended to set an example of the Alternative Employment Practice, to persuade other employers to adopt this alternative employment practice, fixing chronic illegal employment practices under U.S. Code 2000e—2, as defined at 42 U.S. Code

2000e, defining demonstration as persuading the adoption of an alternative employment practice under 42 U.S.C. 2000 e- 2

73.   Third-Party Defendant MAA became insured for Workers' Compensation coverage, which included safety and loss management, incorporating the Percy Program.

74.   Third-Party Defendant MAA failed to adopt the Alternative Employment Practice having rescinded the Contract yet continuing to be insured for coverage of workers' compensation, in retaining the consideration paid on the Contract.

75.   By breaching the Contract, the Defendants irreparably damaged the demonstration of the Percy alternative employment practice, sabotaging the demonstration of the Percy alternative appointment practice, irreparably damaging the purpose of the Contract, leaving the Plaintiff with money damages arising out of the Third-Party Defendants' breach of the Contract. Third-Party Defendant MAA failed to adopt the alternative employment practice as part of the Workers Compensation coverage arranged for by Oriska Corp. GC, in violation of 42 U.S.C. 2000 e- 2. If the Plaintiff receives any judgment against the Defendant/Third-Party Plaintiff in the Primary Action, the Third-Party Plaintiff will be entitled to judgment over against the Third-Party Defendants for contribution or indemnification for the amount of damages and costs awarded to the Plaintiff.

76.   By rescinding the Contract, Third-Party Defendants

undermined the Alternative Employment Practice demonstration. The Third-Party Defendants in breaching the Contract interfered with Oriska Corp. GC's demonstration of the Percy Alternative Employment Practice, interfering with the Plaintiff Percy Class persuading the adoption of the Percy Alternative Employment Practice, causing damage to the Percy Class as third-party beneficiaries of the Contract, in an amount to be determined at trial.

## VII.  AS AND FOR A SECOND CAUSE OF ACTION FOR BREACH OF CONTRACT

77.  All the allegations previously stated are re-alleged and incorporated herein.

78.  The Third-Party Defendants in breaching the Contract interfered with Plaintiff's demonstration of the Percy alternative employment practice, interfering with the Percy Class persuading the adoption of the Percy alternative employment practice causing damage to the Percy Class as third-party beneficiaries of the Contract in an amount to be determined at trial.

79.  The Third-Party Defendants in breaching the Contract interfered with Plaintiff's demonstration of the Percy alternative employment practice, interfering with the Percy Class's ability to persuade the adoption of the Percy Alternative Employment Practice. ORISKA CORP. GC sues here for breach of Contract which caused an illegal employment practice by ORISKA CORP. GC based on MAA's refusal to adopt the Alternative Employment Practice,

leaving ORISKA CORP. GC to seek money damages arising out of the Third-Party Defendants breach of the Contract, which ultimately caused damage to the Plaintiff Percy Class as third-party beneficiaries of the Contract, in an amount to be determined at trial.

80.   By breaching the Contract, the Third-Party Defendants irreparably damaged the demonstration of the Percy Alternative Employment Practice, undermining the demonstration of the Percy Alternative Appointment Practice, irreparably damaging the purpose of the Contract, illegally taking and causing damage in the sum of $180,816.97 paid on consideration of the Contract, $204,000 for Workers Compensation coverage, punitive damages for having taken, converted and stolen the consideration paid in escrow to Nicholas Kordas of Kordas & Marinis, LLP IOLA account on the Contract before the monies were earned by performing the terms of the Contract, and other consequential damages in an amount to be proven at the time of trial.

**VIII.  AS AND FOR A THIRD CAUSE OF ACTION FOR CONVERSION**

81.   All the allegations previously stated are re-alleged and incorporated herein.

82.   Third-Party Defendants and other participants known and unknown, wrongfully converted to their own use funds paid by Oriska Corp. GC in escrow to Nicholas Kordas of Kordas & Marinis, LLP IOLA account, under the Contract, through schemes herein set forth

by wrongfully retaining money paid by Oriska Corp. GC and conspired to do so.

83.  Plaintiff has been damaged as a result of the conversion in an amount to be determined at trial.

### IX.   INTENTIONAL INTERFERENCE WITH CONTRACT

84.  All the allegations previously stated are re-alleged and incorporated herein.

85.  The Contract constitutes an enforceable agreement.

86.  Third-Party Defendants knew of the Contract. Third-Party Defendants intentionally and wrongfully interfered with third-Party Plaintiff's rights to receive full performance under the Contract with the Third-Party Defendants.

87.  As a result of Third-Party Defendants' conduct, the Third-Party Plaintiffs and the Primary Plaintiffs herein have been injured in an amount according to proof to be determined at trial.

### X. AS AND FOR A FOURTH CAUSE OF ACTION FOR UNJUST ENRICHMENT

88.  All the allegations previously stated are re-alleged and incorporated herein.

89.  Third-Party Defendants did not act in good faith towards Third-Party Plaintiff and the Primary Plaintiffs. Instead, Third-Party Defendants through their fraudulent statements and willful concealment before, during, and after the performance of the Contract by the Third-Party Plaintiff, Third-Party Defendants' enrichment occurred at the detriment of Plaintiffs.

90.   If the Third-Party Defendants are allowed to keep the consideration paid by the Third-Party Plaintiff on the Contract, the Third-Party Defendants will be unjustly enriched. The Court therefore should find Third-Party Defendants and other participants known and unknown, who continue to hold funds stolen from Third-Party Plaintiff Oriska Corp. GC without right thereto.

91.   Third-Party Plaintiff has been damaged as a result of the conversion in an amount to be determined at trial.

**XI.   AS AND FOR A FIFTH CAUSE OF ACTION FOR FRAUD IN INDUCEMENT**

92.   All the allegations previously stated are re-alleged and incorporated herein.

93.   Third-Party Defendants had no intention of performing the representations in the Contract, knew Plaintiffs , and Third-Party Plaintiff relied on them. Third-Party Defendants' actions fail to meet the standards of good faith, "honesty in fact" and "reasonable commercial standards of fair dealing".

94.   Third-Party Defendants' actions constituted fraud in the inducement, without which Third-Party Plaintiff would not have entered into and performed its obligations under the Contract.

95.   Third-Party Defendants lulled Third-Party Plaintiff into a belief that its rights would be protected and that the Third-Party Defendants would perform their obligations under the Contract, but the Third-Party Defendants failed to perform their obligations under the Contract, and in fact did not protect the

rights of the Third-Party Plaintiff under the Contract, unilaterally rescinding the Contract and retaining the consideration paid by the Third-Party Plaintiff on the Contract.

96. Third-Party Plaintiffs are thus entitled to rescind the Contract and to equitable relief restoring to them all monies paid in consideration of the Contract, along with money damages and costs.

## XII.   AS AND FOR A SIXTH CAUSE OF ACTION FOR CONVERSION ILLEGAL EMPLOYMENT PRACTICES

97. All the allegations previously stated are re-alleged and incorporated herein.

98. Upon information and belief, Escrow Agent Nicholas Kordas of Kordas & Marinis, LLP released the $150,000 being held in trust in its IOLA account to the Third-Party Defendants without authority and in violation of Judiciary Law § 497 and 22 N.Y.C.R.R. § 1200.46 NY Rule 1.15 (formerly DR 9-102) and rules for acting in a fiduciary capacity as escrow agents when holding the funds of clients and/or third parties.

99. Third-Party Plaintiff demands damages for the taking, conversion and stolen consideration paid in escrow to Nicholas Kordas of Kordas & Marinis, LLP IOLA account on the Contract.

100. Plaintiff has been damaged as a result of the conversion and theft in an amount to be determined at trial.

WHEREFORE, the Third-Party Plaintiff prays for judgment

against the Third-Party Defendants for any judgment over against the Third-Party Defendants for contribution or indemnification for the amount of damages and costs awarded to the Plaintiff in any Judgment rendered against Defendant/Third-Party Plaintiff Oriska Corp. GC by the Plaintiff in the underlying Action, $180,816.97 paid as consideration of the Contract, $204,000 for Workers Compensation coverage, punitive damages and, and such further sums as may be proven as damages against the Third-Party Defendants at the time of trial, together with interest and costs in these actions as may be awarded by the court.

_____
FRANK POLICELLI, ESQ.
Attorney for Third Party
Plaintiff
10 Steuben Park
Utica, NY 13501
(315) 793-0020